## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARPENTER TECHNOLOGY CORPORATION, a corporation,** | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. _____** |
| **v.** | : | |
| | : | |
| **OERLIKON METCO (US) INC., a corporation, and JAMES H. RYAN, an individual,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff Carpenter Technology Corporation ("Carpenter"), by its undersigned attorneys, hereby brings the following Complaint against Defendants Oerlikon Metco (US) Inc. ("Oerlikon") and James H. Ryan ("Ryan") (collectively, "Defendants"), and in support thereof avers as follows:

## INTRODUCTION

1.      Plaintiff Carpenter brings this Complaint seeking a temporary restraining order and/or preliminary injunction and damages due to Defendants Oerlikon Metco (US) Inc. and Ryan's wrongful acts: breach of contract; misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. C.S.A. § 5301, *et seq.*; misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; conversion; and breach of the fiduciary duty of loyalty.

## JURISDICTION AND VENUE

2.      Jurisdiction is appropriate in this matter under 28 U.S.C. § 1331, as it is an action arising under the laws of the United States.

3.      Venue is appropriate in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

4.      Plaintiff Carpenter Technology Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business in Philadelphia, Pennsylvania.

5.      Carpenter is a producer and distributor of premium specialty alloys and metal powders that are used in the aerospace, transportation, medical, and energy industries.

6.      Defendant Oerlikon Metco (US) Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at Lafayette, Indiana.

7.      Defendant James H. Ryan is an adult individual domiciled in West Chester, Ohio.

## FACTUAL BACKGROUND

8.      Paragraphs 1 through 7 are hereby incorporated by reference as though the same were fully set forth at length herein.

9.      On September 16, 2014, Carpenter sent Defendant Ryan an offer of employment for the position of Specialist – Market Development at Carpenter's Bridgeville, Pennsylvania

location.  The offer letter specified that Ryan's employment was contingent on his execution of non-competition and intellectual property agreements.

10.     Ryan signed his offer letter on September 21, 2014.  As a precondition to Ryan's employment with Carpenter, that same day Ryan signed a Non-Competition Agreement ("Non-Compete Agreement") and an Intellectual Property Agreement ("Confidentiality Agreement"), copies of which are attached hereto as Exhibits A and B, respectively.

11.     The Non-Compete Agreement states that Ryan, for a period of twelve (12) months after the termination of his employment, shall not, in relevant part:

> (A)     Either directly or indirectly, solicit or divert to any Competing Business . . . any individual or entity that is a customer or prospective customer of the Company . . .
>
> (B)     Either directly or indirectly . . . be connected as an officer, director, employee, partner, principal, agent, representative, consultant or otherwise with . . . any Competing Business or any other entity which would require Employees use of Confidential Information even though such entity may not be a Competing Business . . .

*See* Exhibit A § 1 (A)-(B).

12.     The Non-Compete Agreement defines "Competing Business" as "any business or enterprise that is engaged in the research, development, manufacture, sale, marketing or distribution of stainless steel, titanium, specialty alloys, or metal fabricated parts or components similar to or competitive with those manufactured by Carpenter."  *Id.* § 1.  It defines "Confidential Information" as "any item of information, or compilations of information in any form, related to the Company's business, that the Company has not made public and that is not generally known to the public," and lists specific examples of items that constitute Confidential Information.  *Id.*

13.     The Confidentiality Agreement states, in relevant part:

> You understand and agree that your employment by Carpenter requires you to keep all Proprietary Information in confidence and trust for the tenure of your employment and thereafter, and that you will not use or disclose Proprietary information without the written consent of Carpenter . . . Upon termination of your employment with Carpenter, you will promptly deliver to Carpenter all documents and materials of any kind pertaining to your work at Carpenter, and you agree that you will not take with you any documents, materials or copies thereof, whether on paper, magnetic or optical media or any other medium, containing any Proprietary Information.

*See* Exhibit B § 3A.

14.     According to the Confidentiality Agreement, "proprietary information" includes "information and material relating to past, present or future Inventions, marketing plans, manufacturing and product plans, technical specifications, hardware design and prototypes, business strategies, financial information, and forecasts, personnel information, and customer lists." *Id.* at § 3.

15.     Carpenter goes to great lengths to protect its confidential and/or proprietary information and its trade secrets, including but not limited to requiring all employees with access to confidential information sign confidentiality agreements; maintaining and enforcing a Company Trade Secret and Confidential Information Protection Policy; restricting visitor access to the Company's facilities; and maintaining appropriate security on the Company's electronic information systems.

16.     Carpenter develops its trade secrets and confidential information at substantial time and expense.

17.     At all times during Ryan's employment with Carpenter, Ryan was employed as a Specialist of Market Development in the Carpenter Powder Products division.  Ryan's job

responsibilities included collaborating with customers to identify needs, identifying new applications for existing products, and coordinating and implementing growth strategies.

18.     As a result of Ryan's employment with Carpenter, Ryan had access to Carpenter's confidential information, including but not limited to its trade secrets, manufacturing and product plans, product technical specifications, upcoming products, customer lists, price lists, and business, sales, marketing, and growth strategies.

19.     On April 27, 2017, Ryan submitted a letter of resignation.  Ryan intended his resignation to be effective the following day, April 28, 2017.

20.     On April 28, 2017, Ryan confirmed that after leaving his employment with Carpenter he would be employed by Defendant Oerlikon Metco (US) Inc.

21.     Oerlikon is engaged in the business of, inter alia, providing surfacing products including additive manufacturing powders and thermal spray powders, and is a direct competitor of Carpenter.

22.     Upon information and belief, Ryan is working in the business unit at Oerlikon engaged in thermal spray coating and equipment.  This Oerlikon business unit is in direct competition with Carpenter's Powder Products division, where Ryan was formerly employed.

23.     On May 3, 2017, Carpenter sent Ryan a letter notifying him that his planned employment with Oerlikon would constitute a violation of the Non-Compete Agreement, and reminding him that he was prohibited from divulging Carpenter's proprietary or confidential information to Oerlikon.

24.     Following Ryan's departure from Carpenter, Carpenter undertook a forensic examination of Ryan's Carpenter computer.  Carpenter received the results of this forensic examination on May 19, 2017.

25.     The forensic examination of Ryan's computer revealed that Ryan copied Carpenter documents onto two personal flash drives.  Ryan copied around twenty three (23) Carpenter files over to such flash drives on Ryan's last day of employment, April 28, 2017, and the day thereafter, April 29, 2017.

26.     The documents Ryan downloaded include specifications for a number of Carpenter products, Carpenter trade secrets, Carpenter market strategy studies, Carpenter cost and pricing information, and Carpenter customer documents including confidential customer product specifications.

27.     Most of the documents Ryan downloaded are pertinent to Carpenter's Powder Products division.  Upon information and belief, Ryan is employed by the Oerlikon department in direct competition with Powder Products.

28.     About ten of the documents Ryan copied from Carpenter's computer to his personal flash drive are documents subject to a Non-Disclosure Agreement between Carpenter and a Carpenter customer.  Carpenter is obligated to maintain the confidentiality of the client's documents pursuant to that agreement.

29.     Ryan is aware of Carpenter's aforementioned Non-Disclosure Agreement with its customer.

30.     Carpenter believes and therefore avers that:

(a)     Ryan has possession or control of Carpenter's original and/or computerized records, Carpenter's documents, proprietary information, trade secrets, confidential customer information, and customer lists;

(b)     Ryan will use Carpenter's proprietary information, trade secrets, and confidential customer information to the benefit of his new competitor Oerlikon and to the detriment of Carpenter; and

(c)     Ryan and Oerlikon will engage in acts constituting a breaches of the Non-Competition and Confidentiality Agreements; a breach of the Pennsylvania Uniform Trade Secrets Act and the Defend Trade Secrets Act; and other tortious conduct, including conversion and breach of the duty of loyalty.

**COUNT I**
**Injunction**
*Plaintiff v. All Defendants*

31.     The allegations contained in the preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

32.     Ryan's conduct constitutes a breach of contract, misappropriation of trade secrets and a violation of the Pennsylvania Uniform Trade Secrets Act and Defend Trade Secrets Act, conversion, and violation of the employee duty of loyalty, as described below.

33.     Oerlikon's conduct constitutes misappropriation of trade secrets and a violation of the Pennsylvania Uniform Trade Secrets Act and Defend Trade Secrets Act, as described below.

34.     By virtue of the foregoing, Carpenter has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

35.      Carpenter is entitled to injunctive relief against Defendants because there will be irreparable harm to Carpenter should Defendants continue to retain and/or use Carpenter's confidential information and trade secrets.  Carpenter will be irreparably harmed by:

(a)     The disclosure of Carpenter's trade secrets, customer lists, or other confidential information;

(b)     The loss of confidentiality of client records and financial information, loss of trust of clients, loss of goodwill, and loss of business reputation;

(c)     The threat to the enforcement of reasonable contracts between Carpenter and its clients; and

(d)     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

36.     The losses suffered by Carpenter as a result of Defendants' conduct cannot be fully or adequately compensated in money damages, and Carpenter does not have an adequate remedy at law.

37.     Greater injury will be inflicted upon Carpenter and its customers by the denial of relief than would be inflicted upon Defendants by the granting of such relief, and issuing such an injunction would be consistent with public policy and in the public interest.

**WHEREFORE,** Carpenter respectfully requests that this Court enter an order requiring that:

1.      A Preliminary Injunction Order issue immediately requiring Ryan and Oerlikon, until hearing and thereafter until further Order of this Court, to:

(a)     refrain from using, disclosing, or transmitting for any purpose, the information contained in the records of Carpenter, including but not limited to the documents Ryan copied from Carpenter's computer;

(b)     return all Carpenter confidential and/or proprietary or trade secret information to Carpenter;

(c)     destroy and delete all Carpenter confidential and/or proprietary or trade secret information;

(d)     immediately suspend Ryan's employment with Oerlikon, if Ryan has presently commenced such employment; and

(e)     any and all other such acts as this Court deems appropriate for injunctive relief.

**COUNT II**
**<u>Breach of Contract</u>**
*Plaintiff v. Ryan*

38.     The allegations contained in the preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

39.     The Confidentiality Agreement is a valid and enforceable contract between Carpenter and Ryan.

40.      Carpenter has duly performed all of its obligations under the Confidentiality Agreement.

41.     By engaging in the conduct described herein, Ryan is violating his express written agreement with Carpenter.

42.     As a consequence of the foregoing, Carpenter has suffered and will continue to suffer irreparable harm and other loss.

43.     Pursuant to the Confidentiality Agreement, Carpenter is entitled to its reasonable costs and attorneys' fees in connection with this matter.

**WHEREFORE,** Carpenter seeks injunctive relief and damages in excess of $75,000 exclusive of interest and costs.

**COUNT III**
**<u>Breach of Contract</u>**
*Plaintiff v. Ryan*

44.     The allegations contained in the preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

45.     The Non-Compete Agreement is a valid and enforceable contract between Carpenter and Ryan.

46.     Carpenter has duly performed all of its obligations under the Non-Competition Agreement.

47.     Oerlikon is a Competing Business as described in the Non-Competition Agreement.

48.     By engaging in the conduct described herein, Ryan is violating his express written agreement with Carpenter.

49.     As a consequence of the foregoing, Carpenter has suffered and will continue to suffer irreparable harm and other loss.

50.     Pursuant to the Non-Compete Agreement, Carpenter is entitled to its reasonable costs and attorneys' fees in connection with this matter.

**WHEREFORE,** Carpenter seeks injunctive relief and damages in excess of $75,000 exclusive of interest and costs.


**COUNT IV**
**Misappropriation of Trade Secrets – Pennsylvania Uniform Trade Secret Act**
*Plaintiff v. All Defendants*

51.     The allegations contained in the preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

52.     Carpenter's information and documentation, including its customer information (including price lists and sales histories), technical specification documents, manufacturing and product plans, and pricing models, all constitute trade secrets.  This confidential information is not generally known to, and not readily ascertainable by proper means by, other people who can

obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Carpenter has spent significant time and expense in compiling and creating the documents reflecting this information.

53.     Ryan possesses Carpenter's trade secrets and there is a substantial likelihood that Ryan will disclose such trade secrets to Oerlikon to use in competition with Carpenter.  Such substantial likelihood exists based on Ryan's downloading of Carpenter's trade secrets at the very end of his employment, immediately preceding his employment with Oerlikon.  In addition, the documents Ryan downloaded concern Carpenter's Powder Products business, which Ryan is now in competition with as an employee of Oerlikon's corresponding division.

54.     Ryan downloaded Carpenter's proprietary and trade secret information onto personal flash drives after submitting his letter of resignation to Carpenter and informing Carpenter he would be working for Oerlikon.

55.     Carpenter believes and therefore avers that Ryan will use such information for Oerlikon's benefit in competition with Carpenter.

56.     Such misappropriation will be willful and malicious and will damage Carpenter.

57.      Such misappropriation of trade secrets is a violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. Section 5301.

**WHEREFORE,** Carpenter seeks injunctive relief and damages in excess of $75,000 exclusive of interest and costs.

## COUNT V
## Misappropriation of Trade Secrets – Defend Trade Secrets Act
### *Plaintiff v. All Defendants*

58.     The allegations contained in the preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

59.     As set forth above, Ryan has transferred Carpenter files to personal flash drives. Carpenter believes and therefore avers that Ryan will disclose Carpenter's trade secrets to Oerlikon and use Carpenter's trade secrets for the benefit of Oerlikon.  Carpenter believes and thus avers that Oerlikon will use Carpenter's trade secrets in competition with Carpenter.  The aforementioned acts constitute misappropriation of trade secrets.  Those trade secrets are related to a service that is intended for use in interstate commerce.

60.     Defendants have willfully and maliciously appropriated Carpenter's trade secrets.

61.     Carpenter is entitled to exemplary damages and attorney's fees due to such willful and malicious appropriation of its trade secrets.

62.     Carpenter is entitled to injunctive relief prohibiting Defendants from retaining, using, or disclosing its trade secrets.

63.     Carpenter is entitled to damages for the actual loss and unjust enrichment of Defendants caused by misappropriation of Carpenter's trade secrets.

**WHEREFORE,** Carpenter seeks injunctive relief and damages in excess of $75,000 exclusive of interest and costs.

## COUNT VI
### Conversion
*Plaintiff v. Ryan*

64.     The allegations contained in preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

65.     The proprietary and trade secret information of Carpenter was and is the property of Carpenter, and was property to which Ryan had no possessory right.  Ryan wrongfully converted such items.

**WHEREFORE,** Carpenter seeks injunctive relief and damages in excess of $75,000 exclusive of interest and costs.

## COUNT VII
### Breach of the Fiduciary Duty of Loyalty
*Plaintiff v. Ryan*

66.     The allegations contained in the preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

67.     As an employee of Carpenter, Ryan held a position of trust and confidence and owed Carpenter duties of loyalty, honesty, and trustworthiness.

68.     By engaging in the activities and practices described herein, Ryan violated his duty of loyalty.

69.     Ryan's conduct was willful, malicious, wanton, intentional, and unjustifiable, and it has been and is the direct and proximate cause of immediate and irreparable harm as well as money damages to Plaintiffs.

**WHEREFORE,** Carpenter seeks injunctive relief and damages in excess of $75,000 exclusive of interest and costs.

## COUNT VIII
## Interference With Existing Contractual Relationships
*Plaintiff v. Ryan*

70.     The allegations contained in preceding and following paragraphs are incorporated herein by reference with the same force and effect as though set forth in full below.

71.     By engaging in the activities and practices described herein, Ryan tortuously interfered with Carpenter's existing contractual and business relations with its clients.

72.     In copying Carpenter's confidential and proprietary information over to his personal flash drive, Ryan became in possession of documentation subject to a Non-Disclosure Agreement with a client of Carpenter.

73.     By retaining that documentation, Ryan is placing Carpenter at risk of violating its obligations to its client under the Non-Disclosure Agreement.

74.     Ryan is aware of Carpenter's Non-Disclosure Agreement with its client, and as such Ryan's interference was done intentionally and with malice.

75.     Carpenter is likely to suffer damages as a result of Ryan's interference.

WHEREFORE, Carpenter seeks injunctive relief and damages in excess of $75,000 exclusive of interest and costs.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

Date: May 25, 2017

_____
Daniel P. O'Meara (PA ID 53535)
Amanda D. Crawford (PA ID 320499)
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109